IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAUL H. ALLRED et al.,
   *Plaintiffs*,

v.

INNOVATIVE BROKERAGE
NETWORK,
   *Defendant*.

Civil Action No. ELH-17-1365

**MEMORANDUM**

This case arises from claims for breach of contract and unjust enrichment. ECF 2 (Complaint), ¶¶ 3-4.[1] Plaintiffs Paul H. Allred and "American Health and Finance" ("AHF")[2] allege that they entered into a distribution contract in September 2014 with defendant Innovative Brokerage Network ("IBN"), a Missouri Corporation, to sell insurance in exchange for sales commissions. *Id.* ¶¶ 3-4; *see also* ECF 13-1 ("Distributor Agreement"). According to plaintiffs, after about a year of doing business, IBN stopped payment of accrued commissions on plaintiffs' insurance sales. ECF 2, ¶¶ 6-8. This suit followed. Defendant answered the Complaint and counterclaimed against plaintiffs for breach of contract. ECF 7 at 3-4.

Now pending is defendant's motion to transfer the case to the U.S. District Court for the Eastern District of Missouri, under 28 U.S.C. § 1404(a). ECF 8. The motion is supported by a memorandum. ECF 8-1 (collectively, "Motion"). In support of the transfer, IBN alleges that Allred signed a contract, a copy of which is attached to the Motion (ECF 8-2, the "Letter"), that contains a forum selection clause in which he "irrevocably consents to personal jurisdiction and

---

[1] Suit was filed in the Circuit Court for Baltimore County. ECF 2. The case was removed to this Court (ECF 1) on the basis of diversity. *See* 28 U.S.C. § 1332.

[2] Plaintiffs assert that AHF is a "Maryland corporate entity." ECF 2, ¶ 2. Defendant asserts that AHF is "a forfeited Maryland LLC." ECF 1, ¶ 2.

venue in the state and federal courts located in St. Louis, Missouri, with respect to any actions, claims, or proceedings arising out of or in connection with [the] Letter." ECF 8-2 at 2.

Plaintiffs oppose the Motion, arguing that the Letter and its forum selection clause do not apply to the case at hand. ECF 12 (Response); ECF 13 (Memorandum) (collectively, "Opposition"). Rather, plaintiffs allege that the Distributor Agreement, a copy of which is attached to the Opposition (ECF 13-1), is the only contract applicable to this case, and it does not contain a forum selection clause. ECF 13 at 2. Defendant has replied. ECF 17 ("Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I. Legal Standards

In *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, ___ U.S. ___, 134 S. Ct. 568, 580 (2013), the Supreme Court determined that "§ 1404(a) and the *forum non conveniens* doctrine provide appropriate enforcement mechanisms" for forum selection clauses. Section 1404(a) of Title 28 provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

In addressing a motion to transfer under § 1404(a), the district court must "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). These include: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Tr. of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015); *see also, e.g.*, *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008); *Cross v.*

*Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005); *Lynch*, 237 F. Supp. 2d at 617. Other factors include the "local interest in having localized controversies settled at home" and the "appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action." *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004).

In a motion to transfer venue pursuant to § 1404(a), the moving party bears the burden of showing, by a preponderance of the evidence, that transfer to another venue is proper. *See Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 607 (D. Md. 2014); *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 770 (D. Md. 2009); *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002). "In order to carry this burden, the movant should submit, for example, affidavits from witnesses and parties explaining the hardships they would suffer if the case were heard in the plaintiff's chosen forum." *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002) (citing *Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp. 2d 710, 712 (D. Md. 2002)). As Judge Blake observed in *Dow*, 232 F. Supp. 2d at 713, where the movant only provides "[m]ere assertions of inconvenience or hardship," it will not have met its burden.

In most cases, the plaintiff's choice of forum is presumptively convenient, and "'should rarely be disturbed.'" *Mamani*, 547 F. Supp. 2d at 469 (quoting *Collins v. Straight Inc.*, 748 F.2d 916, 921 (4th Cir. 1984)); *see also SAS Inst., Inc. v. World Programming Ltd.*, 468 F. App'x 264, 266 (4th Cir. 2012). And, "[a] district court has discretion to decide motions to transfer based on 'an individualized, case-by-case consideration of convenience and fairness.'" *United States ex rel. Salomon v. Wolff*, RWT-06-1970, 2017 WL 3129418, at *2 (D. Md. July 24, 2017) (quoting *Stewart*, 487 U.S. at 29) (internal quotation marks and citation omitted).

However, the Supreme Court said in *Atlantic Marine*, 134 S. Ct. at 581 (citation omitted), that "[t]he calculus changes . . . when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." In that circumstance, "'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Id.* (alteration in original) (quoting *Stewart*, 487 U.S. at 33).

"The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* "First, the plaintiff's choice of forum merits no weight." *Id.* Second, the court "should not consider arguments about the parties' private interests." *Id.* at 582. Third, where the plaintiff's original choice of venue contravenes the forum selection clause, transfer to the proper venue "will not carry with it the original venue's choice-of-law rules." *Id.*

Notably, however, only a "valid" forum selection clause is given controlling weight. *Id.* at 581. "Forum selection clauses are enforced only when they encompass the claim at issue." *Light v. Taylor*, 317 F. App'x 82, 83 (2d Cir. 2009) (citation omitted). Where a forum selection clause does not apply to the dispute in a case, a motion to transfer is evaluated under the conventional § 1404(a) factors. *See, e.g.*, *Steinmetz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 220 F. Supp. 3d 596, 606 (E.D. Pa. 2016).

In interpreting a forum selection clause, federal common law generally applies. This is because a forum selection agreement "implicate[s] the appropriate venue of a court," which is a procedural matter governed by federal rule and statutes. *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010). *See also Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988) ("[B]ecause enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of

forum selection clauses."). *But see Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007) (stating that the law of the jurisdiction "whose law governs the rest of the contract" determines the validity of a forum selection clause).

The parties do not address what law should apply to the interpretation of the documents presented. However, the Letter clearly states that "this Letter shall be governed by and construed in accordance with the laws of the State of Missouri." ECF 8-2 at 2. "The guiding principle of contract interpretation under Missouri law is that a court will seek to ascertain the intent of the parties and to give effect to that intent." *Triarch Indus., Inc. v. Crabtree,* 158 S.W.3d 772, 776 (Mo. 2005) (en banc). "'The intent of the parties is presumed to be expressed by the natural and ordinary meaning of the language in the contract.'" *Campus Lodge of Columbia, Ltd. v. Jacobson*, 319 S.W.3d 549, 552 (Mo. Ct. App. 2010) (quoting *Parker v. Pulitzer Pub. Co.,* 882 S.W.2d 245, 249 (Mo. Ct. App. 1994)).

If a contract is unambiguous, neither parol nor extrinsic evidence may be considered. *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 67 (8th Cir. 1994). Rather, extrinsic evidence may be used to aid interpretation only if a contract is ambiguous. *Press Machinery Corp. v. Smith R.P.M. Corp.*, 727 F.2d 781, 784 (8th Cir. 1984). "'An ambiguity exists when there is more than one reasonable interpretation which can be gleaned from the contract language.'" *McIntire v. Glad Heart Props.*, 399 S.W.3d 505, 509 (Mo. Ct. App. 2013) (citation omitted).

## II. Discussion

### A.

To decide whether the forum selection clause in the Letter governs here, I may consider the Letter (ECF 8-2) and the Distributor Agreement (ECF 13-1). *See TECH USA, Inc. v. Evans*,

592 F. Supp. 2d 852, 857 (D. Md. 2009) (reviewing documents to determine applicability of forum selection clause). It is undisputed that the execution of the Distributor Agreement in September 2014 initiated the business relationship between Allred and IBN. ECF 13 at 2-3; ECF 17 at 2. IBN does not repudiate the Distributor Agreement; it merely argues that the Letter "contractually supplemented" it. ECF 17 at 2.

Notably, the Distributor Agreement does not contain a forum selection clause. The Distributor Agreement, signed by Allred on September 24, 2014, contains eight provisions covering the relationship between Allred and IBN.[3] ECF 13-1. It discusses (1) Products and Services; (2) Use of Name of IBN or Carriers; (3) Licensure; (4) Compensation; (5) Independent Contractors; (6) Indemnification; (7) Limitation of Liability; and (8) Termination. *Id.*

The Distributor Agreement certainly anticipates the possibility of litigation. It provides: "The Distributor shall indemnify and hold harmless IBN and its . . . agents from and against any losses, liabilities, claims, fines penalties [sic], costs, expenses, and damages, including attorney's fees . . . arising as a result or with respect to any breach of this Agreement." *Id.* ¶ 6. And, the Distributor Agreement further specifies: "In no event shall IBN be liable for any indirect, incidental, special, consequential or punitive damages . . . ." *Id.* ¶ 7.

The questions here are (1) whether the Letter controls for purposes of this litigation; and (2) if it does, whether the forum selection clause is mandatory or permissive. To address these questions, I must examine the contents of the Letter in detail.

---

[3] Plaintiff AHF is not mentioned in the Distributor Agreement or the Letter, nor is it a signatory to either one. Neither party discusses these facts, although IBN asserts in a footnote in its Reply that AHF is "a domestic LLC that was forfeited in October 2016 for failure to file a 2015 property return [and] did not have standing to bring this suit." ECF 17 at 1 n.1. IBN offers no support for this contention.

**B.**

To evaluate whether this suit is subject to the Letter, I shall first consider the scope of the Letter, titled "Assumption of Liability and Indemnification Letter."

IBN's contention that the Letter compels the transfer of venue is based on the following language from the Letter's third paragraph (ECF 8-2 at 2): "The undersigned [Allred] hereby irrevocably consents to personal jurisdiction and venue in the state and federal courts located in St. Louis, Missouri with respect to any actions, claims, or proceedings arising out of or in connection with this Letter." *See* ECF 8-1 at 1-2. But, for the Letter to control, the case at issue must be an "action[], claim[], or proceeding[] arising out of or in connection with" it. ECF 8-2 at 2.

The first sentence of the Letter, which is rather lengthy, states, in relevant part (ECF 8-2 at 1):

> In accordance with all terms and conditions put forth in this . . . letter . . . I [Allred] hereby agree to assume all responsibility of [sic] certain payments . . . and to indemnify, defend and hold harmless Innovative Brokerage Network . . . from any claims, liabilities, or expenses (which expressly included expensed [sic] of any regular or advance commissions, bonus or any form of compensation that are paid, to be paid, or claimed to be due and owing from IBN, as well as any chargebacks) which may arise in any manner from the undersigned's [Allred's] contacts, referrals and/or producers brought to IBN, conduct and actions . . . as a licensed insurance agent/agency . . . and, specifically when it pertains to JAMES GLENN, of 920 Marquise Court, Jeffersonville, IN, 47130.

This sentence is not easily parsed. However, it is reasonably construed to mean that if any claims or expenses arise from Allred's actions pertaining to an insured, James Glenn, Allred will indemnify IBN for those claims or expenses.[4]

---

[4] In its Reply, IBN describes the circumstances of a chargeback: "This situation can occur if a distributor sells a policy to a consumer, who then fails to pay premiums to the carrier. The carrier looks to the broker for payment (the charge-back), and under the Distributor Agreement the distributor agrees to bear these losses . . . ." ECF 17 at 2.

In the second paragraph, the Letter states, in relevant part (*id.*):

> The undersigned further understands and agrees that PAUL H. ALLRED, not IBN, will be responsible to the insurance company or carrier for any commission chargebacks incurred by the undersigned's referred producers. The undersigned also agrees that IBN shall be entitled to offset any chargeback of commissions, expenses or fees, owed by the referred producers, specifically, and including without limitation JAMES GLENN, against any insurance carrier, regulatory office, or business entity. . . . The undersigned also agrees to promptly reimburse IBN for any chargebacks, expenses or fees of any kind that is [sic] rolled up or created as a result of the undersigned's referred producing entities.

This phrasing is somewhat broader than the first paragraph, insofar as it covers "any commission chargebacks incurred by the undersigned's referred producers, specifically, and including without limitation JAMES GLENN." However, the parties disagree about the scope of the paragraph. IBN maintains it includes "any commission chargebacks incurred" by Allred's "referred producers." ECF 17 at 5. Plaintiffs argue that it is limited to James Glenn, and that any ambiguity should be construed against the drafter, IBN. ECF 13 at 3-4. The language is arguably ambiguous. But, even the broader reading does not affect the outcome. For purposes of this question, I shall assume without deciding that the Letter applies to "any chargebacks incurred by [Allred's] referred producers."

In its Reply, IBN explains the basis of its contention that the Letter controls here.[5] It asserts: "The non-receipt of certain commissions . . . is the basis of [Allred's] lawsuit." ECF 17 at 2. But, IBN reasons, the Distributor Agreement and the Letter "also provide[] for IBN to withhold from those commissions, as needed, 'any charge-backs'" resulting from sales for which a commission has already been paid out. *Id.* IBN suggests that chargebacks are implicated in this case because the facts alleged in the Complaint, concerning IBN's alleged failure to pay

---

[5] IBN does not explain its reasoning in its original Motion. It simply asserts that Allred signed the Letter, which contains a forum selection clause, so the clause must govern. ECF 8-1 at 1-2.

commissions, could be explained by IBN's unannounced imposition of chargebacks, of which IBN asserts it had no duty to inform Allred. *Id.* at 4.

Put another way, IBN argues implicitly that it never withheld commissions from Allred. Rather, Allred is liable for repayment of commissions for defunct policies, and IBN chose to impose these charges by terminating the commission payments. Therefore, IBN maintains that chargebacks—and the Letter that governs liability for chargebacks—are at issue. It follows, argues IBN, that because the subject matter of the Letter is at issue, the forum selection clause in the Letter applies. *See* ECF 17 at 4-5.

IBN's argument is strained, at best. Plaintiffs' suit is plainly for breach of contract, and that contract is the Distributor Agreement (ECF 2, ¶ 14), which provides for the payment of commissions. ECF 13-1, ¶ 4. IBN may choose to argue that it did not breach the contract because Allred's liabilities offset his commissions, but that affirmative defense does not alter the underlying nature of the suit. Nor does the Letter's heading, "Assumption of Liability and Indemnification," suggest that it applies to a breach of contract action between the parties to the Letter. Moreover, the Letter concludes: "The undersigned further agrees that this Letter constitutes the sole and complete agreement by the undersigned in favor of IBN *with respect to the subject matter hereof*." ECF 8-2 at 2 (emphasis added). That language reflects that the scope of the Letter does not encompass the Distributor Agreement.

In my view, the subject matter of the Letter does not encompass the subject matter of this case. Thus, the forum selection clause does not apply. However, even if it does apply, transfer is not appropriate at this juncture.

## C.

Despite IBN's assertions to the contrary (ECF 8-1 at 2-3), the Letter's forum selection language is not a straightforward mandatory venue clause. The third paragraph of the Letter states, in relevant part (ECF 8-2 at 2):

> The undersigned understands that IBN is a Missouri limited liability company and accordingly agrees that the undersigned's contract application and this Letter shall be governed by and construed in accordance with the laws of the State of Missouri without reference to its choice of law rules. The undersigned hereby irrevocably consents to personal jurisdiction and venue in the state and federal courts located in St. Louis, Missouri with respect to any actions, claims, or proceedings arising out of or in connection with this Letter. Notwithstanding the foregoing, the undersigned expressly acknowledges and agrees that any claim or controversy arising out of or relating [sic] this Letter shall be settled by arbitration conducted in St. Louis, Missouri . . . and the foregoing sentence regarding jurisdiction and venue in the state and federal courts located in St. Louis, Missouri shall apply only with respect to judgment on the arbitrator's award, and enforcement of same, if necessary.

This roundabout language contains several provisions: First, the Letter is governed by Missouri law. Second, Allred consents to personal jurisdiction and venue in St. Louis, Missouri. Third, any claim arising from the Letter is subject to arbitration in St. Louis, Missouri. Fourth, Allred's consent to jurisdiction and venue in Missouri is limited to matters pertaining to enforcement of an arbitration award.

The arbitration clause requires that "any claim or controversy arising out of . . . this Letter shall be settled by arbitration conducted in St. Louis, Missouri." ECF 8-2 at 2. This clause, with the phrase "shall be settled by arbitration," is clearly mandatory. *See IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007) (discussing the varying uses of the word "shall"). But, outside of the context of arbitration, the forum selection clause is permissive, rather than mandatory.

"A general maxim in interpreting forum-selection clauses is that 'an agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion.'" *Id.* (emphasis in original) (citation omitted). The fact that Allred "consents to personal jurisdiction and venue in the state and federal courts located in St. Louis, Missouri" (ECF 8-2 at 2) does not mean that such jurisdiction is exclusive for purposes of litigation. *See Uretek, ICR Mid-Atl., Inc. v. Adams Robinson Enterprises, Inc.*, 3:16CV00004, 2017 WL 4171392, at *3 (W.D. Va. Sept. 20, 2017) (finding that a forum selection clause specifying that the parties "consent to the jurisdiction" of a specific court is "unequivocally permissive"); *see also IntraComm, Inc.*, 492 F.3d at 290; *Albemarle Corp.*, 628 F.3d at 650.

In sum, a transfer of venue to the Eastern District of Missouri is not required by the Letter. Therefore, *Atlantic Marine* does not demand that I give the forum selection clause "controlling weight." *See* 134 S. Ct. at 581; s*ee also Uretek*, 2017 WL 4171392, at *3 ("In cases involving such permissive clauses, a majority of federal courts 'have rejected the analysis employed by the Supreme Court in *Atlantic Marine*, and have instead applied the traditional analysis' for motions to transfer under 28 U.S.C. § 1404(a)." (quoting *Found. Fitness Prod., LLC v. Free Motion Fitness*, 121 F. Supp. 3d 1038, 1043 (D. Or. 2015))).

**D.**

Under the conventional factors for § 1404(a) motions, the Court considers: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Plumbing Servs., Inc.*, 791 F.3d at 444. However, the parties addressed the question of transfer under § 1404(a) only with respect to the forum selection clause. They did not address whether or not transfer is appropriate based

on conventional *forum non conveniens* grounds. Therefore, I shall deny the Motion, without considering whether it might be proper based on traditional grounds of *forum non conveniens*.

### III. Conclusion

For the reasons stated above, I shall DENY defendant's Motion. An Order follows, consistent with this Memorandum.

Date: November 1, 2017

/s/
Ellen Lipton Hollander
United States District Judge